IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSH BOOTH<br>509 Third Street<br>Marietta, Ohio 45750<br><br>  Plaintiff,<br><br>- vs -<br><br>MEMORIAL HEALTH SYSTEM<br>MARIETTA MEMORIAL HOSPITAL<br>By Serving Its Registered Agent<br>  Paul G. Westbrock<br>  401 Matthew Street<br>  Marietta, Ohio 45750<br><br>  Defendant. | Case No. 2:17-cv-439<br>Judge<br><br>Magistrate Judge<br><br><br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND**<br>**ENDORSED HEREIN** |

## COMPLAINT

**I.  JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §216(b).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b) because the acts giving rise to the claims of the Plaintiff occurred within this judicial district, and Defendant regularly conducts business in and has engaged and continues to engage in the wrongful conduct alleged herein and thus, are subject to personal jurisdiction within this judicial district.

3. Pursuant to Southern District of Ohio Local Rule 3.1(b) this case is related to *Myers v. Memorial Health System*, Case No. 2:15-cv-2956 before Judge Algenon L. Marbley.

## II. PARTIES

4. Plaintiff, Josh Booth, is a citizen of the State of Ohio who was employed as a nurse by Defendant in Marietta, Ohio during the statutory period covered by this Complaint.

5. Mr. Booth's "Consent to Sue" is attached to this complaint as Exhibit A.

6. Defendant, Marietta Memorial Hospital, is a non-profit corporation organized under the laws of the State of Ohio and conducts business throughout the State of Ohio.

7. Defendant's principal place of business is located at 401 Matthew Street, Marietta, Ohio 45750 and it regularly conducts business within this judicial district.

8. Mr. Booth began employment with Marietta Memorial Hospital on February 23, 2015.

## III. STATEMENT OF FACTS

9. Defendant maintained an illegal policy wherein it automatically deducted a 30 minute unpaid lunch for each shift its employees worked, regardless of whether the employee actually took a bona fide lunch break.

10. As a result of this policy, Defendant forced employees, including Mr. Booth, to work during lunch and did not compensate them for that work.

11. Around March of 2016, after the related wage and hour case was filed *Myers v. Memorial Health System*, Case No. 2:15-cv-2956, Mr. Booth was called down to a meeting where Defendant's lawyer asked him to sign an affidavit regarding the lawsuit.

12. At the meeting, Mr. Booth felt intimated, backed into a corner, and refused to sign the affidavit.

13. In September of 2016, Mr. Booth asked Defendant if it would be willing to turn his full time weekend position (Friday, Saturday, Sunday) into a flex time position (Saturday, Sunday) so that he could accept a full time job (Monday through Friday) that he was offered.

14. Mr. Booth explained to Defendant that he currently worked his second job Monday through Thursday, but he wanted to take the new full time job (Monday through Friday) they offered him because he would get off much earlier in the day on Friday and could then go home and provide therapy treatments to his daughter that had recently been diagnosed with autism.

15. Defendant, through its manager Amy Pinkerton, indicated that it would be able to accommodate Mr. Booth's request and create a flex time position.

16. Defendant, through its manager Amy Pinkerton, instructed Mr. Booth to file for FMLA leave (since he was helping with his daughter's medical treatment) to get Fridays off, until the paperwork was officially processed to make the flex time position.

17. Around October of 2016, Mr. Booth joined the collective action against Defendant, *Myers v. Memorial Health System*, Case No. 2:15-cv-2956.

18. Then, Mr. Booth signed an affidavit indicating that he and other putative class members were scared to join the lawsuit because of the atmosphere of fear at the hospital. The affidavit was attached to Plaintiffs' motion for class certification.

19. As soon as he began to participate in the lawsuit, Mr. Booth felt as if Defendant always had someone watching over his shoulder.

20. In response to Mr. Booth's participation in the wage and hour lawsuit, Defendant never created the flex time position; instead Defendant called Mr. Booth into a meeting,

questioning him about why he was taking FMLA leave on Fridays when he was working at another job, and accusing him of improperly using FMLA.

21. At the meeting, Amy Pinkerton, Cathy Wolfe, and Theresa Adams, were present.

22. At the meeting, Mr. Booth explained that he took FMLA leave under management direction, and that he was waiting for a flex time position to be created.

23. At the meeting, Theresa Adams indicated there must have been some kind of mix up because Mr. Booth should not have taken FMLA leave.

24. Theresa Adams told Mr. Booth that she was glad that it was just a misunderstanding because she thought Mr. Booth was a good employee and she did not want to lose him.

25. Then, Theresa Adams indicated that that there was precedent for creating flex time positions for individual circumstances, and that she therefore believed that she would be able to create a flex time position for Mr. Booth.

26. Soon after the meeting, Defendant's counsel deposed Mr. Booth in the related wage and hour case.

27. Although Defendant told Mr. Booth on at least two separate occasions that it would create a flex time position, Defendant decided, after Mr. Booth's deposition, that a flex time position was not available.

28. Defendant informed Mr. Booth that a per diem position (without health insurance) could be made available, but Mr. Booth would have to apply to the position and that Defendant could not guarantee he would get it.

29. With no other options, Mr. Booth applied for the per diem position; Defendant offered him the job; and he accepted the position, causing him to lose his health care benefits.

.

30. Mr. Booth experienced a lapse in health care once he took the per diem position, during which he incurred significant medical bills for his family.

31. Due to the atmosphere of fear, hostile work environment, and extreme pressure Defendant exerted on Mr. Booth by extending and revoking a position that his family relied on for benefits, Mr. Booth began to suffer from and was diagnosed with depression and anxiety.

32. Ultimately, Mr. Booth could no longer handle the torment and mental anguish from Defendant's retaliatory game playing tactics, and Mr. Booth, after consultation with his doctor, decided it was best for him to leave his employ before his mental health deteriorated further.

33. Mr. Booth lost significant wages and benefits that his family depended on for their well-being as a result of Defendant constructively discharging him.

## FIRST CAUSE OF ACTION
### (FLSA Retaliation)

34. All of the preceding paragraphs are realleged as if fully rewritten herein.

35. Defendant unlawfully retaliated against Mr. Booth in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq.

36. Mr. Booth engaged in a protected activity when he refused to sign the pre-written affidavit Defendant's counsel wanted him to sign regarding the lawsuit *Myers v. Memorial Health System*, Case No. 2:15-cv-2956.

37. Mr. Booth engaged in a protected activity when he opted into the wage and hour lawsuit.

5

38. Mr. Booth engaged in a protected activity when he further participated in the wage and hour case by signing an affidavit for Plaintiffs attesting to the culture of fear at the hospital.

39. Mr. Booth engaged in a protected activity when he attended his deposition.

40. Defendant knew that Mr. Booth engaged in such protected activities.

41. Because Mr. Booth engaged in the aforementioned protected activities, Defendant took the following adverse retaliatory employment actions against him: taking away a previously offered flex time position; only offering him a per diem position; harassing him at intimidating meetings; creating a hostile work environment; perpetuating an atmosphere of fear; and constructively discharging him.

42. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress and damages. In addition, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available as result of Defendant's retaliation in violation of 29 U.S.C. §215.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

a. An award of damages in an amount to be proved at trial, including but not limited to lost wages, compensatory damages, non-compensatory damages, emotional distress damages, nominal damages, liquidated damages, and punitive damages;

b. An award of prejudgment, post judgment, and all other interest available under law;

c. An award of the costs and expenses incurred in bringing this action together with reasonable attorneys' fees and expert fees;

d. An injunction, prohibiting Defendant from further retaliation or threats of retaliation; and

e. Such other and further legal and equitable relief as this Court deems just and proper.

        Respectfully submitted,

        /s/ Steven C. Babin, Jr.
        Steven C. Babin, Jr.   (0093584)
        Lance Chapin       (0069473)
        Chapin Legal Group, LLC
        580 South High Street, Suite 330
        Columbus, Ohio 43215
        Telephone:   614.221.9100
        Facsimile:    614.221.9272
        E-mail: sbabin@chapinlegal.com

        Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues.

        /s/ Steven C. Babin, Jr.
        Steven C. Babin, Jr.   (0093584)
        Chapin Legal Group, LLC
        Attorney for Plaintiff