IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSH BOOTH, | : |
|       Plaintiff, | :   Case No. 2:17-CV-439 |
| | : |
| v. | :   JUDGE ALGENON L. MARBLEY |
| | : |
| | :   Magistrate Judge Chelsey M. Vascura |
| MEMORIAL HEALTH SYSTEM | : |
| MARIETTA MEMORIAL HOSPITAL, | : |
| | : |
|       Defendant. | : |

## **OPINION & ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment. (ECF No. 16). For the reasons below, Defendant's Motion is **DENIED**.

### I.    BACKGROUND

Plaintiff Josh Booth worked for Defendant Marietta Hospital, most recently in the Intensive Care Unit (ICU). In 2015, Lynette Myers and others petitioned this Court to proceed with a Fair Labor Standards Act (FLSA) collective action, alleging Defendants systematically deducted a thirty-minute lunch from the paychecks of their employees without regard to whether that lunch was actually taken. *See Myers v. Marietta Memorial Health System*, 15-CV-2956. In September 2016, Plaintiff opted-in to the *Myers* FLSA suit and in November 2016, he provided to Plaintiffs' counsel an affidavit which was submitted as an exhibit in the *Myers* Motion for Conditional Certification. (*Myers* ECF No. 74, Ex. 6).

Plaintiff brought this suit alleging Defendants created a hostile work environment and, in retaliation for his joining the *Myers* collective action, denied a scheduling adjustment he agreed to with his immediate supervisor. In addition to working at Defendant Hospital, at the time relevant to this suit, Plaintiff also worked for Marietta Hospice. In order to be home more

consistently to see his kids before their bedtime, and in order to be home to reinforce with his daughter the therapy she was receiving after being diagnosed with autism, Plaintiff asked his supervisor if he could "flex down" his work at the hospital. Specifically, instead of working twelve-hour shifts on Friday, Saturday, and Sunday – shifts Plaintiff describes as invariably running long – he requested to work only Saturday and Sunday, so he could spend time on Friday afternoon working with his daughter. At his deposition, Plaintiff testified that his supervisor agreed to this schedule in "late summer, early fall." (ECF No. 110, Ex. 2 at 28:9).

Sometime after Plaintiff opted-in to the *Myers* lawsuit, he was told that the flex position was no longer available. If he wanted to, he could apply for a per diem position at the Hospital, but the per diem position did not offer health care coverage. For a while, Plaintiff was able to work with his supervisor to take Family Medical Leave Act (FMLA) time on Fridays to work the agreed-upon schedule but was later told that could not continue.

Plaintiff brought this suit alleging he was denied the "flex down" position he had already worked out with his supervisor in retaliation for his joining the *Myers* collective action. Defendants argue that because Plaintiff ultimately resigned, he cannot argue he was the victim of retaliation; and in any event, he cannot prove all four elements of an FLSA retaliation claim. There remain issues of fact in dispute, including when various employees of Defendant knew about the progress of the *Myers* litigation, including Plaintiff's supervisors and the management responsible for scheduling at the hospital and the HR personnel to whom Plaintiff's supervisor spoke when working out his scheduling requests.

Defendants filed a Motion for Summary Judgment. (ECF No. 16). Plaintiffs filed a Response in Opposition (ECF No. 17) and Defendants filed a Reply (ECF No. 18). This is ripe for review.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). Therefore, for purposes of Defendants' Motion, the Court will view the facts in the light most favorable to Plaintiffs.

### B. FLSA Retaliation Claim

The Fair Labor Standards Act makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted … any proceeding under or related to this chapter…." 29 U.S.C. § 215(a)(3). A plaintiff alleging retaliation under the FLSA may offer either direct or circumstantial evidence to support her case. In discrimination cases, "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). *See also Mansfield v. City of Murfreesboro*, 706 Fed. Appx. 231, 235 (6th Cir. 2017) (unpublished) (describing direct evidence in the context of FLSA claims). In most cases, the plaintiff "will be able to produce direct evidence that the decision-making officials knew of the plaintiff's protected activity…[b]ut direct evidence of such knowledge or awareness is not required…." *Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002). Instead, a plaintiff may instead present circumstantial evidence which tends to show an improper reason for her

dismissal. If the plaintiff is offering circumstantial evidence, the court engages in the familiar *McDonnell Douglas* burden-shifting analysis.

The Supreme Court established a burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the Sixth Circuit has applied that burden-shifting to FLSA retaliation claims. *Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004). This familiar test has four parts. To establish a *prima facie* case of retaliation, an employee must prove: (1) she was engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) she was the subject of an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999). A *prima facie* showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff can establish such a case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory – or, as here, non-retaliatory – reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is able to do this, the burden shifts back to the plaintiff, who must now prove by a preponderance of the evidence that the proffered reasons were mere pretext and not the true reasons for the adverse action. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 883 (6th Cir. 1996). *See also Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

### III.   ANALYSIS

Both parties present their arguments in the framework of the *McDonnell Douglas* burden-shifting analysis. Thus this Court's analysis will proceed by examining each of the four steps.

1. *Protected Activity*

The first question is whether Plaintiff engaged in activity that is protected under the FLSA. This element is not in much dispute between the parties. In September 2016, Plaintiff opted-in to the *Myers* collective action, and in November 2016, provided an affidavit to Plaintiffs' counsel that was submitted with Plaintiffs' Motion for Conditional Certification. Joining this collective action certainly constitutes a protected activity because "the assertion of statutory rights by taking some action adverse to the company…is the hallmark of protected activity under § 215(a)(3)." *Dikker v. 5-Star Team Leasing, LLC*, 243 F. Supp. 3d. 844, 855 (W.D. Mich. 2017) (quoting *Claudio-Gotay v. Beckton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004)) (internal punctuation omitted). Plaintiff's having joined the collective action is also squarely within the meaning of "filed any complaint" as outlined in § 215(a)(3). Although other actions short of joining the collective action could also be protected activity, given Plaintiff did join the lawsuit, there is no genuine dispute about whether Plaintiff engaged in protected activity.

2. *Employer Knew of the Activity*

The second part of the analysis is to determine whether Defendant knew of Plaintiff's participation in FLSA protected activity. In many cases, a plaintiff will have direct evidence of the decision-maker's knowledge, because, for example, that decision-maker was the supervisor to whom they had previously made complaints. But such direct evidence is not necessary, and "a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall*, 287 F.3d at 552. At least one district court inferred knowledge about a plaintiff's protected activity "from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Id*. at 553 (citing *Kralowec v.*

*Prince George's County, Maryland*, 503 F. Supp. 985 (D. Md. 1980), *aff'd* 679 F.2d 883 (4th. Cir), *cert. denied* 459 US. 872 (1982). In *Kralowec*, the court concluded it was "highly improbable" that the two parties – the one to whom the plaintiff complained and the one who eventually dismissed the plaintiff – "would not have discussed the plaintiff's complaint as soon as" they learned of it. *Mulhall* at 553 (citing *Kralowec* at 1010).

The record is not clear about which decision-makers knew what about the underlying litigation, and it is unclear when those decision-makers learned key facts. Plaintiff's having filed his consent-to-join would constitute constructive notice, or institutional notice. There remains a genuine dispute of material fact on this element.

### 3. *Plaintiff Was the Subject of an Adverse Employment Action*

The Sixth Circuit, adopting a test from the Seventh Circuit, defines a "materially adverse" employment action as a

> change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (adopting these factors in the Title VII context); *see also Bowmann v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000) (same); *Pettit v. Steppingstone, Center for the Potentially Gifted*, 429 Fed. Appx. 524, 532 (6th Cir. 2011) (unpublished) (applying these factors to an FLSA claim). The question here is whether the changed circumstances in Plaintiff's employment constitutes a materially adverse change.

There is at least a genuine dispute of fact about whether Plaintiff was the subject of an adverse employment action. Being offered a per diem position with the Hospital after being told

7

he could "flex down" is a material difference because the per diem position did not provide health insurance. The difference between these two positions is analogous to a demotion: it would constitute a "decrease in wage or salary" and would certainly constitute "a material loss of benefits." A reasonable jury could conclude Plaintiff was subject to a materially adverse employment action.

### 4. *There Was a Causal Connection*

The fourth step of the analysis concerns whether there was a causal connection between the plaintiff's protected activity and the adverse employment action. A plaintiff can demonstrate a causal connection either through direct evidence or "through knowledge coupled with a closeness in time that creates an inference of causation." *Parnell v. West*, 1997 WL 271751 at *3 (6th Cir. 1997) (unpublished) (citing *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). For the plaintiff to meet their burden, "temporal proximity, when coupled with other facts, may be sufficient in certain cases to establish the causal-connection prong…" *Mulhall*, 287 F.3d at 551. No single piece of circumstantial evidence is dispositive, but "evidence that the defendant treated the plaintiff differently from identically-situated employees or that adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).

The question for courts has been how much proximity is required. The Sixth Circuit has reasoned that a "time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell* at *3. However, when the other supporting evidence has been compelling, this Circuit has found a temporal

connection even when the time lapse was fifteen months. *Harrison v. Metropolitan Government of Nashville*, 80 F.3d 1107, 1999 (6th Cir. 1996).

In this case, Plaintiff opted-in to the *Myers* case in September 2016 and provided an affidavit to counsel that was put on the public docket in November 2016. His deposition discusses the scheduling difficulties in November 2016 and being told at that time to use the FMLA work-around because "flexing down" was apparently no longer possible.[1] Plaintiff was deposed in January 2017, by which time the denial of flex time had already taken place. If both these events – the affidavit and the denial of flex time – took place in November 2016, this could constitute temporal proximity. Even if Plaintiff were not denied flex time until later in the winter, this could still be sufficient causal connection. This temporal proximity, taken together with the other evidence presented by Plaintiff and discussed above, there is at least a genuine dispute about whether there was a causal connection between Plaintiff's protected activity and the adverse employment action.

## IV. CONCLUSION

There remains a genuine dispute of material fact such that summary judgment would be inappropriate at this time. The Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

                                                      <u>s/Algenon L. Marbley</u>
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED: March 12, 2019**

---

[1] Q: And all of this was [your supervisor's] idea?
A: That's how this all started.
Q: And apparently, at some point, [HR] found out about it?
A: When [supervisor] gave me the approval to do so, saying yes, if I cannot schedule you off – this was the schedule of November – if I cannot schedule you off on Fridays, then call off using your FMLA. I've already okayed it with [HR]… (ECF No. 17, Ex. 1 at 38:20-39:3).

9